Good morning, Judges. My name is Gregory Hatton. I represent the Appellant Dameron Hospital Association. I've never been here before, so I was talking to a senior colleague in downtown San Francisco last night about what I should open with. And he told me, you've got to tell them what you want, what your client wants. And so I'm going to do that. What my client wants is clarity and consistency with the California Insurance Code. As the briefs make very clear, there is a considerable debate going on right now between the automobile insurance industry and hospital emergency rooms that treat their injured insureds. The case before this Court will have an impact on all Californians, especially those in circumstances similar to two of the three injured patients whose cases gave rise to this appeal. Injury victims who have no health insurance or whose health insurance, for whatever reason, has been denied coverage for their emergency injury treatments. Now, all three injury victims here had first-party coverage for emergency and continuing injury care under their State Farm automobile coverage. At some point during their hospital treatment, they did what injury victims always do. They assigned all insurance benefits of any kind. The assignments were at the moment of the entry into the emergency room before any care was given. Isn't that correct? That is not correct. The evidence in the record at the district court was that at least one of the injury and asking that somebody who has a possible subdural hematoma and who is going to wind up being in the hospital for a few days, as that patient did, to sign documents before he is evaluated and treated would be highly irregular. But what is the evidence that the signature occurred at what time? I can't recall the exact time. Is that the one where there was no signature at all? Wasn't there one case where there never was a signature? That is correct. All right. And we briefed the law about the implied assignment and the reasonable expectations of the patients at the time. The defendant isn't contesting the fact of the assignment. They are contesting the impact of it. Is that correct? That is correct. And that's a matter of State law. It is a matter of State law. You've got three Federal judges here, none of whom happen to be from the State of California. Why exactly should we be passing on this broadly? Should it be, should we wait? There is a case pending for the State supreme court. Should we wait for that? Will that answer the question? We brought that to the Court's attention. And because of the central focus of Insurance Code Section 520 on these issues, we put in a footnote in our opening brief that this Court may want to hold back until the California supreme court. Well, I'm asking if the possibility is there. Should we? Is it your position that we should wait for the California supreme court to speak to that case? And if so, how long a wait is that? Two questions, Your Honor. First question, yes, you should. Second question, it is my understanding that the case is fully briefed. There's been about over 30 amicus briefs. I've read several of them. And we're talking about at least a year here. But I think at least a year until oral argument? Until you've got a published opinion. There is no oral argument scheduled yet. That's correct. My law clerk checked this morning, and there's still no oral argument set. But the indication is that we're at least a year away from oral argument. And then, of course, whatever time it takes to render the decision. So that could put this on hold for a long time, which would be very unusual. That would be unusual. But as I said in my opening comment, what we need here is clarity and consistency with the California insurance code. Well, then, if that's the case, why don't we just follow Henkel? Well, first of all, in Henkel, for some reason, insurance code section 520 was never even considered in Henkel. And Henkel is one of those cases. That's an argument you can make to the California Supreme Court, but we're not free to decide on a redo the California Supreme Court would decide differently. We're bound to follow, on questions of State law, the California Supreme Court. That's correct. And I believe that Henkel actually supports Dameron's case because it says that an anti-assignment provision that purports to block an assignment of a claim for benefits after the money has come due under the policy is void or unenforceable. And so Henkel's got something for everybody in it. But the fundamental problem with Henkel is that it doesn't address the code section that controls here, which is insurance code section 520. I'm aware of the argument that's being made by State Farm, which we call the timing argument, which is something that the district court relied on and which the judges have touched on here today, which is when did this assignment take place? Was the money due? And I'm watching my timing here because I forgot to ask to notify the judges, and I apologize for this. It's like a reserve. It's your time, counsel. Okay. Okay. But, you know, the question is in the briefs extensively about was there anything to assign at the time these assignments of benefits were made. And the answer is yes. The code section, insurance code section 520, says it uses the term loss as the triggering event. And State Farm makes much of the fact that their policies use the term accident and occurrence. But as stated in our briefs, the difference between loss, accident, and occurrence is really quite trivial. And the triggering event that gives rise to the patient's right to make a claim under the policy is the injury itself and presenting for treatment. Isn't there a possibility that the insurance company could be subjected to some burdens if we said that this assignment was okay? Additional burdens? And that is the partial assignment argument that is raised by State Farm, and I think really it's not an issue, and here's why. The claim that is being assigned here to Dameron is the patient's claim for benefits arising out of Dameron's treatment. That's the claim that's being assigned. It's important to focus on what's being assigned. And what State Farm is saying is, well, there could be multiple assigned claims under our U.M. policies. Well, that happens typically under any policy where health benefits are afforded the insurer. The ---- Kennedy, that doesn't change the fact that means that you're dealing here with a partial assignment, and you're making the insurer deal with multiple parties in a circumstance where otherwise the insurer would not have to deal with multiple parties. Well, I don't know if the final supposition is true about not having to deal with multiple parties. Where health benefits are afforded under a first-party policy of insurance, multiple providers typically submit claims under assignment of benefits. And there can't be competing lawsuits. The problem that was addressed in the Stein v. Cobb case cited by State Farm can't happen here. There is no exposure to a multiplicity of lawsuits arising out of the claim that has been assigned, because the claim that has been assigned here is just the claim for benefits relating to the assignment. This claim may have been fully assigned, but there are other potential claims arising out of this policy and this coverage. And that does not affect the enforceability of the assignment. Multiple-assigned claims often appear. Certainly in the health care industry or the health insurance industry, that happens on a regular basis. Well, you have more than that here, though. You have the patient himself or herself as a potential claimant. Indeed, they went off in subtle claims so that the injured party receives money directly. And that party is presumably a claimant because that party has claims against the uninsured motorist. And the contention by State Farm is that, well, if we've got a policy under which we provide first-party health benefits, which they do under their U.N. policy, that's not disputed, all we have to do is tack on some coverage for our insured's pain and suffering, and that will invalidate. Well, they don't have to tack on. It's there. I mean, there's no question, but the injured party has a claim against the uninsured motorist, and State Farm's policy covers whatever the uninsured motorist would be responsible for. So they're not tacking something on. It's kind of inherent in the coverage, isn't it? It is inherent in the coverage, but the exposure to a multiplicity of claims is something that happens in any policy where claim benefits are assignable. And so if we say they are, in spite of the clause, aren't we adding burdens in this case? And I don't believe that you are. There is no evidence in the record that the assignment of the insured's right to have his or her medical bills paid has actually exposed State Farm to a multiplicity of claims and presented a conflict of the type that is stated hypothetically in their brief. The presentation of medical bills, either by the insured or by the providers, does not change the presentation of the claim to State Farm substantively under an underinsured motorist policy. The claims are presented by the insured, along with all the medical bills, or the provider is presenting the same medical bill and saying, I need to be paid directly because I've got an assignment of benefits. None of this, none of the terms in the State Farm policy get around the prohibition on the anti-assignment clause in Insurance Code Section 520. What you have is an argument of administrative inconvenience, not one of exposure to a multiplicity of lawsuits arising out of the matter that has been assigned. Because Dameron can only sue once for its entire medical bill. I don't understand why you're focusing on Dameron there, though. It's the insurance carrier that writes the policy that includes this anti-assignment provision and is the one that's going to be besieged potentially by multiple claims. The fact that your client can only be one of those claims knocking on the door once doesn't help the insurance company in the slightest. That's the wrong perspective for this policy, isn't it? That is the insurance company's perspective. But that's not the reason the provision is stuck in there. There is there I would like to reserve a couple minutes at the end, but in response to your question, Judge, there are always a multiplicity of medical bills that are presented in an underinsured motorist claim. Under State Farm's position, their anti-assignment clause would not be valid if there was only one provider and only one claim. They create a hypothetical situation that does not alter the contract or the law. So you're down a little over two minutes, so you may reserve. Thank you. We'll hear from the insurance company. Thank you, Your Honor. May it please the Court, Mark Bonino, appearing on behalf of State Farm. Just to go to the next point. Scalia, what's your position with respect to the pending floor case in the California Supreme Court? Should we just put this case on hold? No, Your Honor, you shouldn't put it on hold. The floor case actually gives this Court a blueprint for how this case should be decided. Now, wait a minute. There's two floor cases, the one from the court of appeal, which we know about, but there is pending a review of that case. Correct, Your Honor. But the one from the court of appeal, which this Court can consider, it's not published because once the review was granted, it automatically, by a rule, is depublished. It's not a choice issue by the Supreme Court. That is the way the rules operate in California. That case is a justice from our court of appeal, their justices, as you know. Justice Aicola wrote the opinion in that case, and he focused on this whole rule or insurance code section 520 question and pointed out that in the 140 years that that section had been on the books in California from 1872, it had only been cited in two appellate cases, one of which was the citation in floor, the case he was writing. The other was a case that was an assignment, the Gillis case, an assignment of a complete policy benefit. The mention was only in passing. It is not a statute that has been relied on by any. I don't know that we're free as a Federal court sitting in a case involving State law to decide, well, this State statute is old, so we don't have to pay attention to it. I don't know that you are, Your Honor, and you're to follow the California Supreme Court law or the law as you believe the California Supreme Court. You know this better than I do. This brings it back to the question. Because we are bound to follow, should we wait for the California Supreme Court to speak in the case that they've taken? The California Supreme Court has already spoken on this, and not back in 1872. They did it in 2003 in the Henkel case. And in the Henkel case, the six of the seven justices of the California Supreme Court concluded that where an insurance contract prohibits the assignment, that contract is not assignable unless, they say, unless the money was already owing. And here, as the questions, I think, when opened up on this matter, the assignments were signed by two of the three patients as soon as they were stabilized. That was the testimony in the record. And it's a question that I think we need to ask ourselves, is there a reason for us or should or should not we wait for floor? I mean, you've obviously suggested the answer is no, but you want to talk about Henkel, and I'm still trying to get an answer to that question. The reason why you shouldn't wait for floor is because Henkel has already decided the question that is presented to this Court. Perhaps, but then why did the Court decide to grant review in floor? I mean, I can't help but think that there's something potentially out there that might happen, and I don't want to be ignorant of it. Your Honor, my crystal ball doesn't tell me why they granted review in floor, except to say that the justices who granted review are the same justices who decided Henkel. So I think the fair inference is they intend to dispose of 520 or severely limited in the same way that Justice Icola did in the Court of Appeal case, which is depublished. But beyond that, we will not know until they set it for argument, and we won't know how long it's going to be before the argument, as you probably well know. There are cases in the California Supreme Court that are disposed of within six months of the filing of the last brief. In the case of floor, it's been a year. There are cases that go for four and five years. The Supreme Court sets its own – our Supreme Court sets its own order of argument. Is there any prejudice to anybody if we wait? I mean, is there any urgency? Your Honor, I think there is prejudice to State Farm and to the other uninsured motorist insurers in California for the various reasons that you have all already mentioned in this argument. That is, if the hospital, which here is not operating under the Hospital Lien Act and is not operating even with a clear contract of assignment, and the clear and conspicuous is what I'm focusing on when I say not a clear contract of assignment, is able to throw a monkey wrench into the prospective settlement by the injured patient with his or her own insurer, as was done here. There was some question, well, there really wasn't any conflict here. Well, the record here shows there was a conflict. The plaintiffs, the insureds, attorneys, were making demands on State Farm for payments of those policy limits. The record is replete with those demands. And State Farm was faced with a choice. They had this hospital that said it had an assigned claim, and they had insureds who had uninsured motorist rights, which went well beyond the medical bills. They included wage loss. They included pain and suffering and things like that, and which were limited by the amount of the policy limits. That puts State Farm into the very bind that the Hankel Supreme Court talked about, which is allowing these kinds of assignments is a bad rule because there is a ubiquitous conflict, a conflict that is always going to exist between the party who has this contract right and the party who has the insurance benefit rights. Are you telling us, then, it's not just the hospital that has a pending claim, that there are some insureds that have not been paid? In this case, I'm sorry, Your Honor, no. The insureds' claims have been settled in this case. They were settled. The insurance company elected to pay its insureds on each of these claims. But the point is they paid the policy limits. They paid policy limits. They paid policy limits, I believe, on the IRMAP policy, which was the largest of the three claims. They paid her the $30,000 uninsured motorist limits. And interestingly enough, she is the one who was insured by Kaiser and who, for whom Kaiser paid the medical bills, that's in the record, and yet the Dameron Hospital is trying to proceed against her for the balance and by by, excuse me, proceed against the uninsured motorist limits for the balance, and by so doing, they are in effect, if State Farm hadn't paid her, they would have been injecting her with into this dispute, which the Supreme Court of California in the Prospect case I don't mean to interrupt, Your Honor, but I'll ask you. Well, I suggest for the other two claims, policy limits were not paid, so presumably there's coverage available that could be used to pay the hospital for assignments that on their face appear to be valid, and yet the carrier has chosen not to make that payment. There are other there are limits available in the other two cases, but again, in those two cases, the assignments are not valid assignments in this case that has not yet been adjudicated. There is a document in. No, but it does it does cause some concern about the reality of the argument that the carrier is faced with multiple claims and don't know who to pay, and so the carrier pays one and doesn't pay the rest and saves the rest of the money for itself. That gives me a different feel for what the insured company's interest is. The carrier's interest, Your Honor, in California generally is always in favor of the insured and has to be in favor of the insured. Well, in this case, it doesn't look like it worked out that way. I mean, you struck deals with the insured, but the insured has this debt to the hospital that's gone unpaid. The insurance company hasn't expended the policy limits yet. Exactly how is that working in the insured's best interest? The insured basically wants the money paid to them immediately.  The insured, you have to pay the hospital first, and that's not the law in California. Well, I'm not certain they're saying first. I mean, they want to be at the front of the line because they'd like to get the whole pop, but in this case, if there's still money left in the policy that the carrier hasn't paid out, why shouldn't the hospital be able to get to it? The hospital, if it had a claim for some reasonable fees, could bring that claim against the carrier after the fact, but it can't do it without a valid assignment, number one, which, again, for the purposes of this case, that has not been adjudicated yet, and this assignment was in no way conspicuous, plain or clear, and it was made when these people, immediately when they stabilized, not after they had, in the case of Irma P., run up $37,000 in fees, and the insured would have preferred to have the patient stand outside the emergency room door and not enter. I'm sorry, Your Honor. Well, just realistically. I mean, this happens all the time in emergency room admissions. The person wants to get into the emergency room because the person wants to be treated. So in emergency room admissions in California, Your Honor, the emergency room cannot turn down a patient. They can't make the patient sign a document before they are treated. And indeed, one of these people didn't sign because they weren't in a condition to sign. Exactly, Your Honor. And so that's not something that, this isn't something where That doesn't mean the patient is off scot-free and has no financial obligation to the hospital. No, Your Honor, it doesn't. And in the case, for example, of Irma P., who I keep coming back to, who had the Kaiser insurance, she did have Kaiser insurance. Kaiser was billed, Kaiser paid. And under California law, once Kaiser pays, that, under California law and the Kaiser Damron Hospital contract, once Kaiser pays, Damron Hospital has no right to proceed further to try to collect any further amounts from the patient at all. There is no balance billing that is allowed in California. I take it then that Kaiser did not pay the full amount of the hospital bill? Kaiser paid $7,900, which to the, if that's what they paid, that is the full reasonable amount that Kaiser was owed under the Damron contract. Damron did not go back to Kaiser and say, under our agreement with you, Kaiser, you owe us some more money. Because those are the negotiated rates that the insurance companies and the health And pursuant to the Kaiser contract with Damron Hospital, which is in the record, once Kaiser pays, excuse me, when Damron treats a Kaiser patient, Damron agrees it will not proceed against the patient for anything beyond what Kaiser pays and cannot proceed against the patient for anything beyond what Kaiser pays. And there's similar provisions in the Blue Cross contract, which was one of the other people, three people involved in this case. And in the Blue Cross contract, Blue Cross asked for information. Damron didn't provide Damron Blue Cross with the information. And so Blue Cross said it was going to pay the claim. So what Damron did is, it basically, by failing to pursue the avenues that it had available to it, it tried to inject the patient's own uninsured motorist coverage as the source of payment, because that was a big chunk of cash that they could try and go after somewhere. And that is against California public policy on a balance building issue. It's against California public policy on the Hinkle case with regard to the assignability of insurance proceeds. And it's against California public policy with regard to the Howell case, which is the case that deals with the question of what are reasonable damages. Are they amount billed? The answer is clearly they are not from our Supreme Court in Howell. What are reasonable damages are either the negotiated amount or if there's some separate evidence as to what the reasonable amount is. That's got to be the level of proof that has to come up. And the Supreme Court has been dealing, our Supreme Court has been dealing in this area in a number of cases within the last phase of really 10 years. Hinkle, 2003. Howell was decided in 2000, I believe, 11 or 12. Prospect was decided in 2006, I believe. In any event, but in that, you know, from the standpoint of a Supreme Court, this is fairly recent history. It is not something where we're going back to an 1863 case or something for the authority for this position. Unless the Court has any further questions, I will submit. Robertson, Mr. Hatton, you have some reserved time. Thank you. I guess what we're hearing today from State Farm is that if there's competing claims and policy limits, issues that a prohibition on an assignment of benefits in the insurance code doesn't apply. They get a hall pass. Competing claims and policy limits issues are a reality in the liability insurance industry and have been for decades, and it has never been argued successfully as a basis for violating our insurance code. The hospital rates cases that counsel was citing to this Court have absolutely nothing to do with the issue before this panel. The issue before this panel goes to the enforceability of an assignment of benefits provisions. The hospital lien cases and the hospital billing cases don't address it. As I said earlier, Hankel comes down in Dameron's favor on the general issue of the voidability of anti-assignment clauses. The Supreme Court is reviewing Fleur. Insurance Code 520 sits at the heart of that, but the language of insurance code section 520 could not be more clear. And there is no case that's been presented to this Court that is citable as authority that suggests a reason why insurance code section 520 shouldn't apply. State Farm says it's from the horse and buggy era. A simple review of the code and the code history shows that it was last amended in 1947. Our legislature is presumed to know what laws are on its books, and there is no way to write a policy of insurance to get around those laws. Thank you very much. Roberts. Thank you, counsel. The case just argued will be submitted for decision.
judges: Adelman, O'scannlain, Clifton